AUSAs: Justin L. Brooke, Jared D. Hoffman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

24mj2199

UNITED STATES OF AMERICA

v.

NAZARIO ROLON,

Defendant.

**SEALED COMPLAINT**

Violation of 18 U.S.C. § 1951

COUNTY OF OFFENSE:
WESTCHESTER

SOUTHERN DISTRICT OF NEW YORK, ss.:

JUSTIN GRAY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Commit Hobbs Act Robbery)

1.  Between at least on or about March 18 and March 19, 2024, in the Southern District of New York and elsewhere, NAZARIO ROLON, the defendant, and others known and unknown, knowingly combined, conspired, confederated, and agreed together and with each other to commit robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, the defendant conspired together and with others to rob a warehouse that sells various unlicensed marijuana and nicotine products in Mount Vernon, New York.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2.  I have been a Special Agent with the FBI since approximately January 2018. Prior to joining the FBI, I was an investigator with the Brooklyn District Attorney's Office since 2015. Over the course of my career, I have participated in numerous investigations of homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking offenses. I have been personally involved in the investigation of this matter.

3.  This affidavit is based upon my personal participation in this investigation, my conversations with other law enforcement personnel, and my review of law enforcement records and other evidence, and my training, experience, and advice received relating to investigations into homicides, armed robberies, firearms offenses, conspiracies to commit violent crimes, and drug trafficking crimes. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during my investigation. Where

the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

4. Based upon my participation in the investigation of this matter, my conversations with members of the Mount Vernon Police Department ("MVPD") and other members of the FBI investigating this matter, my review of video surveillance, and my review of related law enforcement reports and records, I have learned the following:

    a. On or about March 18, 2024, at approximately 10:00 p.m., two customers (the "Customers") arrived at an address on South Fifth Avenue in Mount Vernon, New York, a wholesale warehouse that sells various unlicensed marijuana and nicotine products (the "Warehouse"). The two Customers placed an order for a large quantity of vapes and hookahs, among other items, from the Warehouse. It took employees of the Warehouse approximately two hours to prepare their order.

    b. A little after midnight, on March 19, 2024, after the Customers' order was prepared, two employees from the Warehouse helped the Customers carry the boxes containing the Customers' merchandise from the Warehouse to the Customers' vehicle. At that point, according to statements provided by the Warehouse employees and the Customers, as well as video surveillance, roughly between 10 and 15 people (the "Targets"), exited a van (the "Van") that was parked near the Warehouse and ran over to the Warehouse's employees and Customers. Many of the Targets possessed and brandished firearms.

    c. According to one of the two Customers, when the Targets got out of the Van, they ran over to the two employees and the Customers, pointed their firearms at them, forced them to go back inside the Warehouse, and shouted, "lay down, lay down." Still images from video surveillance outside the Warehouse during the armed robbery are depicted below:



 

d. Shortly after the Targets jumped out of the Van and approached the Warehouse employees and Customers with firearms, a gunfight between the Warehouse employees and the Targets broke out.

e. At approximately 12:15 a.m., multiple MVPD officers responded to the armed robbery at the Warehouse. At the Warehouse, the MVPD officers observed a black male lying on the floor with an apparent gunshot wound to his head. He was wearing green and white sneakers, grey and black jeans, and a black Nike hooded sweatshirt with the hood covering his face. Emergency Medical Services ("EMS") on scene pronounced him dead at 12:36 a.m. Based on a fingerprint analysis I performed on the deceased individual and my participation in this investigation, I know the identity of this deceased individual and am aware that he was one of the Targets who participated in the armed robbery of the Warehouse.

f. At the Warehouse, MVPD officers also observed another male lying under a shelving unit in the Warehouse, with two apparent gunshot wounds to his torso, one gunshot wound to his left upper chest, and one to the lower left abdomen (the "Victim"). EMS transported the Victim to a Mount Vernon hospital, where he was pronounced dead at 1:07 a.m. An employee of the Warehouse confirmed that the Victim was also an employee of the Warehouse.

g. At the Warehouse, MVPD officers recovered an AR-15 firearm, four AR spent shell casings, and three spent 9mm shell casings. According to a Warehouse employee, the AR-15 was owned by the Warehouse and stored behind the register for protection purposes. Law enforcement also seized from the Warehouse approximately 1,665 pounds of marijuana recovered in leafy form, and 1,107 pounds of Tetrahydrocannabinol-infused edibles.

10. On or about March 20, 2024, several of the Targets were arrested and charged for their roles in the armed robbery. Following their arrests, at least one Target consented to a search of his cellphone (the "Target Cellphone") by the FBI. Based on location data obtained from the Target Cellphone, I learned that the Target Cellphone was in the vicinity of a certain building on Exterior Street (the "Exterior Street Building") in the Bronx, New York, from approximately 2:25

p.m. to around 8:56 p.m. on March 18, 2024, prior to the armed robbery. Review of surveillance video from the Exterior Street Building also indicated that individuals from the armed robbery at the Warehouse, matched through the distinctiveness of their clothing, were at the Exterior Street Building during that timeframe and later returned to the Exterior Street Building roughly twenty to thirty minutes after the robbery at the Warehouse.

11. Based on my participation in this investigation, I am aware that following the armed robbery, a source of confidential information[1] (the "CI") participated in voluntary interviews with the FBI and told them, in substance and in part, that he participated in the armed robbery and that another participant of the armed robbery told the CI that the group expected to rob the Warehouse of millions of dollars, kilograms of cocaine, and a large quantity of marijuana; and that that the group intended to sell the cocaine and marijuana after they stole it.

### Identification of the Defendant

12. On or about May 6, 2024, members of the New York City Police Department ("NYPD") responded to a 911 call placed by an individual ("Individual-1") who wanted to report a threat she had received. After NYPD officers arrived at Individual-1's location, Individual-1 voluntarily spoke with the NYPD officers, and the conversation, which took place in English and Spanish, was recorded by a NYPD officer's body camera. Based on my review of that recording and my conversations with other members of law enforcement fluent in Spanish, I am aware that Individual-1 told the NYPD, in sum and substance, the following:

    a. Individual-1 knew an individual named NAZARIO ROLON, and ROLON told Individual-1 that he was involved in the attempted armed robbery of the Warehouse.

    b. Individual-1 and ROLON had previously been in a romantic relationship and shared a child, but the relationship ended two years ago. Individual-1 and ROLON were still in contact because they shared a child.

    c. After learning that ROLON participated in the attempted armed robbery of the Warehouse, Individual-1 told ROLON that she did not want him to see their child anymore. In response, ROLON threatened Individual-1 with sending people to beat her. According to Individual-1, ROLON told her, in sum and substance, that ROLON was already on the run and had nothing left to lose by doing so.

    d. Individual-1 further told members of law enforcement, in sum and substance, that she was providing this information to law enforcement because she was concerned for her and her child's safety and did not want ROLON to have access to her child. Individual-1 filed a domestic incident report and complaint report against ROLON.

---

[1] The CI has prior conviction for disorderly conduct and theft by unlawful taking. The CI has previously provided information to federal law enforcement which has proven reliable and been corroborated. The CI did not, however, disclose his involvement in this robbery until after it was completed.

4

13. On or about May 14, 2024, Individual-1 participated in another voluntary interview with members of law enforcement to discuss NAZARIO ROLON, the defendant. Based on my participation in that interview, in which Individual-1 spoke English, I am aware that Individual-1 stated, in sum and substance, the following:

 a. Individual-1 knew that ROLON participated in the attempted armed robbery of the Warehouse because he confided in her when they were on better terms that he had recently participated in a robbery in Mount Vernon, New York in which two people were killed.

 b. Individual-1 knew another individual ("Co-Conspirator-1"), who Individual-1 identified by name, and that ROLON and Co-Conspirator-1 were friends and were always together.

 c. Based upon ROLON's description of the robbery to Individual-1, Individual-1 was able to identify a Pix11 news article about it, which she sent via text message to ROLON. (ROLON did not respond to that text message.)

 d. ROLON had long used a particular phone number (the "Prior Rolon Number"), but he appeared to have stopped using it sometime in March. Between the time ROLON stopped using his prior cellphone number and the May 14, 2024 interview with law enforcement, ROLON had been in contact with Individual-1 using approximately five or six different phone numbers. Individual-1 provided law enforcement with the Prior Rolon Number.

 e. ROLON drove a Nissan that was registered to his mother (the "Nissan").

 f. ROLON told Individual-1 that he was currently located in Mexico.

14. As part of this investigation, I reviewed historical cell site data, returned pursuant to a search warrant, for the Prior Rolon Number. The historical cell site data information confirmed that the cellphone associated with the Prior Rolon Number was in the vicinity of the Warehouse in Mount Vernon, New York during the armed robbery, at approximately 12:14 a.m. Because Individual-1 told law enforcement that NAZARIO ROLON, the defendant, had been using the Prior Rolon Number during the period in which armed robbery of the Warehouse occurred, I believe that ROLON was at the Warehouse during the armed robbery. Based on the historical cell site data, I am also aware that the Prior Rolon Number was in the vicinity of the Warehouse on two occasions in the days leading up to the armed robbery. Based on my training and experience, I believe that ROLON went to the Warehouse in the days leading up to the armed robbery to scout the location of the armed robbery.

15. Based upon my participation in this investigation, I know that Co-Conspirator-1, separately charged in connection with the armed robbery of the Warehouse, is currently at large. I have reviewed historical cell site data, returned pursuant to a search warrant, for a cellphone that belonged to Co-Conspirator-1 (the "Co-Conspirator-1 Phone"). That historical cell site data indicated, among other things, that, in the early morning of March 20, 2024, the Co-Conspirator-1 Phone began traveling south from the New York area, departing New York by crossing over the George Washington Bridge, ultimately arriving in the area of Orlando, Florida late in the night of

March 20. Along this route, the Co-Conspirator-1 phone stopped for approximately four hours on March 20 in the vicinity of a Super 8 motel in Garysburg, North Carolina, before continuing on a path of travel to Orlando, Florida.

16. Based on my review of New York DMV records, I know that the Nissan is registered to an address in Queens, New York that is associated in law enforcement databases with NAZARIO ROLON, the defendant. License plate reader ("LPR") reports for the Nissan show that on or about the early morning of March 20, 2024, following the armed robbery of the Warehouse, the Nissan traveled out of New York by crossing the George Washington Bridge.

17. Records obtained pursuant to a subpoena from a Super 8 Motel in Garysburg, North Carolina, indicate that NAZARIO ROLON, the defendant, checked in as a guest at the motel on March 20, 2024. Additional records provided by the Super 8 Motel indicate that NAZARIO ROLON, the defendant, arrived in the Nissan.

18. Based on information returned pursuant to a subpoena to the service provider for the Prior Rolon Number, I know the Prior Rolon Number was deactivated pursuant to customer request on or about March 21, although an account for a cellphone associated with the Prior Rolon Number remains active.

19. Based on my review of LPR reports, I am aware that as recently as June 6, 2024, the Nissan was in the vicinity of Orlando, Florida, and in the vicinity of where the Co-Conspirator-1 phone was located prior to it ceasing providing consistent data on or about March 21, 2024.

20. Based on my participation in this investigation and evidence collected to date, I believe NAZARIO ROLON, the defendant, participated in the armed robbery of the Warehouse with Co-Conspirator-1, and that ROLON and Co-Conspirator-1 fled together to avoid being detained by law enforcement.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of NAZARIO ROLON, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Justin Gray (signed by VR with permission)
JUSTIN GRAY
Special Agent
Federal Bureau of Investigation

Sworn to me by telephone or other reliable
electronic means pursuant to Federal Rule of
Criminal Procedure 4.1, this 7th day of June, 2024.

_____ (via Teams)
THE HONORABLE VICTORIA REZNIK
United States Magistrate Judge
Southern District of New York